(ADRC) 62004
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALZHEIMER'S DISEASE RESOURCE CENTER, INC.,

                    Plaintiff,                    Civ. No.

      -against-

                                  **COMPLAINT**

ALZHEIMER'S DISEASE AND RELATED
DISORDERS ASSOCIATION, INC. d/b/a
ALZHEIMER'S ASSOCIATION

                    Defendants.
-------------------------------------------------------------X

      Alzheimer's Disease Resource Center, Inc., by its attorneys, Morris Duffy Alonso &

Faley, alleges upon information and belief, as follows:

## INTRODUCTION

      1.     Plaintiff Alzheimer's Disease Resource Center, Inc. (hereinafter "Plaintiff,"

"ADRC" or "former Long Island Chapter"), by its counsel Morris Duffy Alonso & Faley,

asserts causes of action including unfair competition, misrepresentation, deceptive trade

practices, unjust enrichment, tortious interference with prospective business advantage,

conversion, fraud and forgery against Defendant Alzheimer's Disease and Related Disorders

Association, Inc. d/b/a Alzheimer's Association (hereinafter "Defendant" or "National

Association") arising from Defendant's wrongful conduct.  The National Association has

repeatedly and fraudulently misidentified itself as the former Long Island Chapter, or as

affiliated with the former Long Island Chapter, to solicit donations (intended for Plaintiff),

intentionally converted funds/donations to the National Association from or intended for

the former Long Island Chapter, has misrepresented its identity to confuse the former Long

Island Chapter's contributors and others, and has misled the public with the intent to

1

appropriate the ADRC's good works as its own. The National Association has participated in a systematic course of conduct with the intent to deceive prospective charitable donors, through a course of misrepresentations, unfair business practices, and other deceptive acts, trading on Plaintiff's name and reputation. Plaintiff seeks compensatory damages in an amount not less than $5,000,000, and punitive damages.

2.      Defendants have committed numerous violations of New York State and Federal law, including: (1) misrepresentation, false designation of origin and unfair competition in violation of 15 USC§ 1125(a); (2) New York Trademark Dilution in violation of New York General Business Law § 360(L}; (3) unlawful deceptive acts and practices in violation of New York General Business Law § 349; (4) violation of New York Unfair Competition law; (5) unjust enrichment; (6) violation of New York CLS UCC § 3-404; (7) conversion; (8) tortious interference with prospective economic advantage; and (9) forgery.

## THE PARTIES

3.      Plaintiff ADRC is a not-for-profit corporation with its principal office located at 45 Park Avenue, Bay Shore, New York 11706. ADRC was incorporated in the State of New York in 1983 as "Alzheimer's Disease and Related Disorders Association – Nassau/Suffolk Counties Chapter, Inc." In 1994, its name became Alzheimer's Disease and Related Disorders Association – Long Island Chapter, Inc." In 1999, its "assumed name" became "Alzheimer's Association – Long Island Chapter." On November 6, 2012, following its disaffiliation from the National Association, its name became "Alzheimer's Disease Resource Center, Inc."

4.      ADRC provides personal services to individuals on Long Island afflicted with Alzheimer's and provides support and services for their families and has done so since it was incorporated in 1983. Its mission statement is: "Our mission is to support research that may lead

to a cure for Alzheimer's Disease, to provide care, support and education programs for families in need, and to be advocates for local families who are coping with Alzheimer's Disease and other dementias."

5.      Defendant National Association is a separate not-for-profit 501(c)(3) organization consisting of multiple local chapters and field offices, with its National Office at 225 N. Michigan Avenue, Floor 17, Chicago, Illinois 60601.

6.      The National Association also utilizes the mailing address "P.O. Box 96011, Washington D.C. 20090-6011."

7.      Upon information and belief, the National Association is primarily dedicated to funding research and raising awareness of the Alzheimer's disease and related disorders and is primarily funded through charitable donations and fund raising.

8.      Mary Ann Ragona was appointed as the Executive Director/CEO of the former Long Island Chapter in February 2003 and remained the Executive Director/CEO of ADRC following its disaffiliation from the National Association.  Except for the relationship stated above, Ms. Ragona has had no affiliation with the National Association.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1125(a), 28 U.S.C. § 1331, 28 U.S.C. 1332(a)(1), and  28 U.S.C. § 1367.

10.     There is complete diversity of citizenship between the sole Plaintiff and the Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11.     Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. §1391(b) and (c) because all parties transact business within this district, and this is the district in

which a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

## FACTS

12. The charitable industry within which Plaintiff and Defendant operate is highly competitive. There are many charitable organizations in the United States that incorporate the term "Alzheimer's" in their business name, thereby making these organizations an easy prey for unfair competition and misrepresentations by competing charitable organizations.

13. While primarily focused on providing care, the ADRC offers a host of compatible comprehensive services and programs for individuals with dementia/ Alzheimer's and their families, including a 24 hour help service, counseling by certified social workers, educational materials, support groups, caregiver safety products, home visits, and training for healthcare professionals.

14. ADRC, through public and private funding, makes referrals to healthcare providers and support groups for people afflicted with Alzheimer's and related disorders and their families, provides resources for home care and companionship, maintains services for training families and individuals to care for people with Alzheimer's, and generally provides "hands on" services for families and individuals afflicted with Alzheimer's all at no cost.

15. In order to support the services it provides, the ADRC relies on public and private funding, including charitable donations and contributions.

## STATEMENT OF RELATIONSHIP

16. The National Association and ADRC, the former Long Island Chapter entered into an affiliation agreement, entitled "Statement of Relationship," on or about December 14, 1998. Under the Statement of Relationship, the National Association gave the former Long Island Chapter the exclusive right to operate in Nassau and Suffolk Counties. The Statement

of Relationship provided the former Long Island Chapter with, among other things, the exclusive right to host fundraising and awareness events (walks, golf outings, etc.) in Nassau and Suffolk Counties. The National Association promised to protect this exclusive territory from other affiliated chapters and to refrain from soliciting on Long Island itself without involving the former Long Island Chapter. Among other things, the Statement of Relationship stated that:

a)   The former Long Island Chapter would carry out the parties' common mission *"at the local level within the territory approved by"* the National Association. (Section 1.2)

b)   *Territory: Chapter accepts the exclusive responsibility for Territory as from time to time, the Chapter requests and is approved in writing by National and subsequently specified in approved Chapter By-laws. Chapter agrees to provide to the residents of the Territory those services required by Chapter Standards and other relevant policies. The Territory is that area mutually agreed upon between the Chapter and National for which Chapter will assume responsibility. Chapter will represent the Association and its mission in the Territory, and the parties agree that the Territory and other chapter territories will be respected per policies and procedures of National.*

### BREACH OF STATEMENT OF RELATIONSHIP

17.   Upon information and belief, the New York City Chapter of the National Association is a separate not-for-profit corporation with its principal place of business at 360 Lexington Avenue, New York, New York 10017.

18.   For the past eight (8) years prior to the parties' disaffiliation, the New York City Chapter, over the objection of the former Long Island Chapter, repeatedly encroached upon and violated the former Long Island Chapter's territorial exclusivity by holding various events in Nassau and Suffolk Counties. Such events included cocktail receptions; solicitations made through banks in Nassau and Suffolk; Forget-Me-Not galas; and golf events on Long Island.

Many of these events were duplicative of events hosted by the former Long Island Chapter in Nassau and Suffolk Counties.

19.   The former Long Island Chapter's Gala and Golf events were established in 2005 and 2006 for the express purpose of leveraging financial support from the Neuwirth Foundation and to support the Neuwirth Family Care Center/Long Island Alzheimer's Disease Resource Center ("the Neuwirth Center").   These restricted events were developed as a direct response to the restricted donations that the Neuwirth family gave the former Long Island Chapter for the sole purpose of creating the Neuwirth Center.   Proceeds from these restricted events support the continued operations of the Neuwirth Center, and these restricted events stayed in place to honor the former Long Island Chapter's commitment to the Neuwirth family and donors who gave money for the express purpose of sustaining the Neuwirth Center.   This is consistent with Paragraph 1.2 of the Shared Fundraising Agreement's definition of "Restricted Gifts" ("A donor-imposed restriction is a restriction resulting from a donor's specific stipulation or from a Party's explicit representation or promise to the donor regarding the use of the gift being solicited.   The Party which receives a gift subject to a donor-imposed restriction shall honor the restriction, and a gift so restricted shall not be included in Shared Revenue.") and does not violate the policies related to Shared Fundraising.   The National Association violated the Statement of Relationship and shared Fundraising Agreement by demanding that funds raised at the Long Island Chapter's Gala and Golf events should be unrestricted and sent to the National Association.

20.   The Long Island Chapter objected to the National Association's failure to protect the Long Island Chapter's exclusive territory, as defined in the Statement of Relationship.   The National Association's resulting failure to facilitate and support chapter activities consistent with the goals and mission as required by the Statement of Relationship has allowed the New York

City Chapter to raise money in the Long Island Chapter's territory on several occasions with the National Association's knowledge and consent but without the former Long Island Chapter's consent. For example, the New York City Chapter raised Forget-Me-Not donations from Long Island businesses in 2010 with no reimbursement of funds to the former Long Island Chapter. The event was supposed to be an unrestricted event with proceeds shared by the New York City Chapter and the former Long Island Chapter, but once this was brought to the attention of the National Association, the event became restricted with all proceeds going to the National Association to the exclusion of the chapters. In addition, both the New York City Chapter held an annual kick-off reception for its New York City Gala event and the National Association held a kick-off reception for its Rita Hayworth Gala event in Southampton, which is on the east end of Long Island, without the former Long Island Chapter's consent. Finally, the New York City Chapter held its First Annual Golf Tournament at Glen Head Country Club, which is located in Long Island, on August 1, 2011, without the former Long Island Chapter's consent. The New York City Chapter's Golf Tournament took place one month after a golf outing sponsored by the former Long Island Chapter, and interfered with the former Long Island Chapter's fundraising efforts.

21. The National Association violated the Statement of Relationship and parties' Shared Fundraising Agreement by soliciting funds from entities in Long Island, without including or consulting the former Long Island Chapter in its fundraising effort and excluding them from sharing in these funds.

22. The National Association also breached the Statement of Relationship by:

   a) Mandating that the Long Island Chapter's Board of Directors amend its resolution pertaining to the Long Island Chapter's Compensation Committee;
   b) Interfering with the Executive Director and CEO's ("ED/CEO") responsibilities for the day-to-day operations of the Long Island Chapter, as authorized by the

Long Island Chapter's Board of Directors, by excluding the Executive Directors and CEO's ("ED/CEO") from discussions between the Association, the Board Chair of the Long Island Chapter, and the Long Island Chapter's employees;

c) Unduly restricting or limiting the Long Island Chapter's access to CMS and other electronic resources provided by the Association;

d) Mandating that the Long Island Chapter's ED/CEO turn over confidential payroll information for the Long Island Chapter to the Association and placing the ED/CEO in jeopardy of violating her fiduciary responsibilities to the Long Island Chapter;

e) Creating a revenue stream through Shared Fundraising that effectively charges a fee for using the National Association's trademarks and copyrights in violation of Sections 3, 4, and 6 of the Statement of Relationship; and

f) Violating Section 7 of the Statement of Relationship, which gives the Long Island Chapter complete control over its own assets and complete responsibility for its own liabilities without interference by the National Association for as long as the Statement of Relationship remains in effect unless otherwise specifically agreed upon by both parties.

23.   The former Long Island Chapter raised the issue of New York City Chapter's violations of the Long Island Chapter's territorial exclusivity rights to both the New York City Chapter and the National Association.  However, the National Association failed to take action to protect the former Long Island Chapter's exclusive territory.

24.   Encroachment into Nassau and Suffolk Counties by the New York City Chapter resulted in the loss of revenues for the former Long Island Chapter and adversely impacted services provided by the former Long Island Chapter to the Long Island community.

25.   The ADRC's Board of Directors voted to separate from the Alzheimer's Association because of the National Association's failure to respect and protect the former Chapter's exclusive territory, and significant, burdensome, and unnecessary demands by the National Association related to restricted revenue fundraising, donor research gift restrictions, and employment decisions.

26.   The Board's vote also resulted from its belief that the National Association is an organization that is focused on a top down structure with unreasonable executive compensation and operating expenses.

27.   ADRC concluded that "not enough money raised over the past several years, by the

National Association, has been going to research to find a cure for <u>Alzheimer's Disease</u>, or for programs and services that would benefit our Long Island families."

28.   The ADRC Board members want to work to raise funds that will be used locally to provide much needed programs and services for Long Island families who are caring for loved ones with Alzheimer's Disease.

**DISAFFILIATION**

29.   The National Association breached the Statement of Relationship by, among other things, failing to protect Long Island Chapter's territorial exclusivity in Nassau and Suffolk Counties. Moreover, attempts to rectify territorial impingement and other disputes through a request for arbitration by the former Long Island Chapter, as anticipated by the Statement of Relationship, resulted in the National Association's voting "unanimously to disaffiliate" the former Long Island Chapter on or about October 6, 2012.  (*See* Exhibit A).  In response, the former Long Island Chapter's Board of Directors voted to disaffiliate from the National Association and continue operating as ADRC effective November 6, 2012.  After the parties' disaffiliation, there was no "Long Island Chapter" of the National Association.

**MASS MAILINGS BY NATIONAL ASSOCIATION MISREPRESENTING ITSELF AS THE LONG ISLAND CHAPTER.**

30.   Immediately subsequent to its decision to disaffiliate the Long Island Chapter, the National Association began mass mailing individuals in Nassau and Suffolk Counties with intentionally misleading literature.  The solicitations or "mailings" requested potential donors to donate to the "Long Island Chapter" while surreptitiously having the check sent to the National Association!

31.   After disaffiliating the Long Island Chapter, the National Association engaged in approximately seventeen (17) separate mass mail campaigns to Long Island residents in an

attempt to solicit donations for itself in the name of the former Long Island Chapter.  During the same period one year earlier, October 2011 through January 2012, the National Association effected approximately four (4) mailings to Long Island residents.

32.   The letters and remittance slips provided to prospective donors in the National Association's most recent mass mail campaigns identified the "Long Island Chapter" as the recipient on the return remittance slip to be placed in the return envelope,[1] but used an address for the National Association.

33.   The address was "P.O. Box 96011, Washington, D.C. 20090-6011."  This was and still is an address for the National Association.

34.   The National Association also used fake notes and yellow "post-its"  purportedly scribed by the Executive Director/CEO of the former Long Island Chapter, Mary Ann Ragona, to solicit donations.

35.   The National Association has obtained donations directly from the former Long Island Chapter's donors and supporters through the unauthorized use of Mary Ann Ragona's name and her forged facsimile signature.

36.   The National Association forged Mary Ann Ragona's name on letters it sent out between October 2012 and January 2013.

37.   Upon information and belief, the National Association's policy is that when it receives a charitable donation check that has the word "Alzheimer's" in the name of the payee, it endorses and deposits such check in its own account, even though the check is made payable to the Long Island Chapter.

38.   In spite of its knowledge of the parties' disaffiliation and the continued

---

[1] In each solicitation mailing, a return envelope was enclosed with a "window" on the return envelope.  A detachable remittance slip (7"x3") identifying the donor was to be inserted into the return envelope with the address of the National Association shown in the window.

existence of ADRC, the National Association unlawfully converted and deposited checks into its own bank account, thereby depriving the former Long Island Chapter of the proceeds intended for it; ignored the intent of donors who supported the former Long Island Chapter and who continue to support ADRC; and deprived donors of the right to contribute to the charity of their choice, from at least October 6, 2012, to January 31, 2013.

39.   After the parties' disaffiliation, the National Association intentionally and without authorization utilized the name and signature of the former Long Island Chapter's Executive Director/CEO, Mary Ann Ragona to solicit donations in the name of the Long Island Chapter.

**FRAUDULENT NATIONAL ASSOCIATION FUND RAISING MAILINGS FROM OCTOBER 6, 2012 TO JANUARY 31, 2013**

40.   Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "Special Thank You Gift Endorsed" (Exhibit B), in which the National Association's letter utilized the signature of Mary Ann Ragona as the Executive Director/CEO of the former Long Island Chapter to solicit donations to the National Association.   The promotion identified the sender as the Alzheimer's Association, Long Island Chapter, 45 Park Avenue, Bayshore, New York 11709-7308.  Yet, disturbingly and fraudulently this solicitation enclosed a remittance slip with the address as "Alzheimer's Association Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011."  The former Long Island Chapter does not and has never maintained a mailing address at that location.  This address sent the donations to The National Association.  Not only did the National Association utilize Mary Ann Ragona's name and signature on the letters, the National Association also indicated that the money was going to the "Long Island Chapter" when, Defendant knowingly, intentionally and fraudulently had donations sent to the National Association's Washington D.C. address.

11

41.   An example of the "remittance slip is below:



42.   Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "2012 Annual Fund" which had a return address of Alzheimer's Association, Long Island Chapter, 45 Park Avenue, Bayshore, New York 11709-7308.   The National Association again utilized Ms. Ragona's name and had a return envelope with a remittance slip addressed as Alzheimer's Association, Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011.  (Exhibit C)  Again, the Washington D.C. address was an address for the National Association.

43.   Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "2012 New York State Drive."  This mailing included a yellow "post it" purportedly signed by Mary Ann Ragona.  The return envelope was addressed with the National Association's address and the solicitation included a letter purportedly signed by Mary Ann Ragona. The National Association utilized Ms. Ragona's name and had a return envelope with a remittance slip addressed as Alzheimer's Association, Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011.   (Exhibit D)  Once again, the Washington D.C. address was an address for the National Association.  A copy of the "post it" purportedly scribed by Mary Ann

12

**Ragona is below:**

alzheimer's association®

the compassion to care, the leadership to conquer®

125 Cherry La.
Medford, NY 11763-4021



## 2012 New York State Drive
## Ends January 15, 2013

Dear Friend,

Today, more than 5 million ... disease, including 320,000 here in ... number could reach 16 million.

Alzheimer's disease is more pr... as many as 350,000 people aged 65 a... disease.

That's why we've established a fi... York. We need to do everything we ca... provide more caregiving resources and ... that could ultimately lead to a victory ov...

Your gift of $6, $10, $15, or even $2... us reach our goal, it will help fund our mission to elimi... ...zheimer's disease through the advancement of vital research; to provide care and support for all affected; and to reduce the risk of dementia through the promotion of brain health.

Thank you for your kindness, generosity and support.

Gratefully,

*Mary Ann Ragona*

Mary Ann Ragona
Executive Director/CEO
Long Island Chapter

Dear Friend,

Please be generous during our Year-End Drive to fight Alzheimer's disease.

Thanks!

370953

13

44.    Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "Quest For a Cure," dated November 7, 2012, which again utilized the Long Island Chapter's address to the National Association utilized Ms. Ragona's name and had a return envelope with a remittance slip addressed as Alzheimer's Association Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011.   (Exhibit E) Once again, the Washington D.C. address was an address for the National Association.

45.    Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "Quest For a Cure" No. 2 dated November 17, 2012, utilizing an address purportedly associated with the former Long Island Chapter.  The letter dated November 17, 2012 was purportedly signed by Mary Ann Ragona.  The National Association utilized Ms. Ragona's name and had a return envelope with a remittance slip addressed as Alzheimer's Association, Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011.  (Exhibit F) The Washington D.C. address was an address for the National Association.

46.    Following the parties' disaffiliation, the National Association sent solicitations to donors dated November 19, 2012, utilizing Mary Ann Ragona's name, the address of the former Long Island Chapter and a return envelope with a remittance slip indicating that money donations were going to the former Long Island Chapter when, in fact, the money was going to an address of the National Association.   The National Association utilized Ms. Ragona's name and had a return envelope with a remittance slip addressed as Alzheimer's Association, Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011.  (Exhibit G)  The Washington D.C. address was an address for the National Association.

47.    Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "Your 2013 Annual Fund Winter Labels" solicitation utilizing Ms. Ragona's good name as Executive Director/CEO of the Long Island Chapter. The National Association

included a return envelope with a remittance slip addressed as Alzheimer's Association Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011. (Exhibit H) The Washington D.C. address was an address for the National Association.

48. Following the parties' disaffiliation, the National Association sent solicitations to donors relating to "Two generous benefactors" indicating that Mary Ann Ragona was the letter's author and that the Former Long Island Chapter was the recipient of donations. The National Association utilized Ms. Ragona's name and had a return envelope with a remittance slip addressed as Alzheimer's Association, <u>Long Island Chapter</u>, P.O. Box 96011, Washington D.C. 20090-6011. (Exhibit I) The Washington D.C. address was an address for the National Association.

49. Following the parties' disaffiliation, the National Association sent solicitations to donors for a "special gift." The National Association indicated that the money was going to the former Long Island Chapter and utilized the Long Island Chapter's address. The National Association again utilized Ms. Ragona's name and included a return envelope with a remittance slip addressed as Alzheimer's Association Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011. (Exhibit J) The Washington D.C. address was an address for the National Association.

50. Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "2012 Year End Drive" with a letter signed "Gratefully, Mary Ann Ragona." It indicated that the money was going to the Long Island Chapter. The National Association once again utilized Ms. Ragona's name and included a return envelope with a remittance slip addressed as Alzheimer's Association Long Island Chapter, P.O. Box 96011, Washington D.C. 20090-6011. (Exhibit K) The Washington D.C. address was an address for the National Association.

51.    Following the parties' disaffiliation, the National Association sent solicitations to donors relating to "Together With Your Help?"  It contained a letter purportedly signed by Mary Ann Ragona indicating that the money was going to the Long Island Chapter.  The National Association again utilized Ms. Ragona's name and included a return envelope with a remittance slip addressed as Alzheimer's Association, <u>Long Island Chapter</u>, P.O. Box 96011, Washington D.C. 20090-6011.   (Exhibit L)  The Washington D.C. address was an address for the National Association.

52.    Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "2012 Year End Drive" in correspondence indicating that the money was going to the former Long Island Chapter and allegedly signed by Mary Ann Ragona.   The National Association included a return envelope with a remittance slip addressed as Alzheimer's Association, <u>Long Island Chapter</u>, P.O. Box 96011, Washington D.C. 20090-6011. (Exhibit M)  The Washington D.C. address was an address for the National Association.

53.    Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "Donor Confirmation," again utilizing the Long Island Chapter's return address but having the money go to National Association's P.O. Box 96011, Washington D.C. 20090-6011.   (Exhibit N)   The Washington D.C. address was an address for the National Association.

54.    Following the parties' disaffiliation, the National Association sent solicitations to donors entitled "Thank You," in a donation request dated October 29, 2012, again purportedly signed by Mary Ann Ragona with a return address for the Long Island Chapter; however, having the return address for donations was the National Association's P.O. Box 96011, Washington D.C. 20090-6011. (Exhibit O)  Again, the Washington D.C. address was the address for the National Association.

55.   Following the parties' disaffiliation, on November 1, 2012, the National Association sent solicitations to donors entitled "Walk to End Alzheimer's" again purportedly signed by Mary Ann Ragona.   The National Association included a return envelope with a remittance slip addressed as Alzheimer's Association, <u>Long Island Chapter</u>, P.O. Box 96011, Washington D.C. 20090-6011.   (Exhibit P)   The Washington D.C. address was the address for the National Association.

56.   Plaintiff seeks all damages allowed by law, including the amount of all donations made to the National Association that were received as a result of the above mailings.

## **CONFUSION AMONG DONORS**

57.   Upon information and belief, donors sent checks to the National Association believing the money was going to the former Long Island Chapter.

58.   For example, Irene Alexander cut a check in the amount of $100.00 payable to the "Alzheimer's Association of Long Island" on December 13, 2012.   Annexed as Exhibit Q is a true and accurate copy of the letter sent to Ms. Alexander by the National Association purportedly signed by Mary Ann Ragona.   In response, Ms. Alexander sent the check to the National Association believing it was going to the former Long Island Chapter.   Ms. Alexander is, in fact, a team captain for the Alexander All Stars, a walk team from the 2012 Old Bethpage Walk organized to support the Long Island Chapter.   When Ms. Alexander realized the check was not going to the Long Island Chapter, she put a stop order on her check, which cost her $25.00.   Ms. Alexander told her daughter that she "felt deceived" and that "someone is trying to confuse people like me".

59.   Upon information and belief, other donors who responded to the National Association's mass mailings were similarly confused and deceived into making donations to the National Association that were intended for the former Long Island Chapter.

## COUNT I

## MISREPRESENTATION, FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION IN VIOLATION OF 15 USC §1125(a)

60.   Plaintiff repeats and realleges each and every prior allegation made in paragraphs 1 through 59 as if fully set forth herein.

61.   These false representations have misrepresented the nature, characteristics, and/or qualities of the former Long Island Chapter's services or commercial activities by implying to the marketplace that the National Association and the former Long Island Chapter are one and the same.

62.   The National Association's false and misleading descriptions, and misleading representations, of fact, have resulted in a likelihood of confusion in commerce, whereby numerous ordinary prudent donors have been, and are likely to be, misled into believing that the National Association and the former Long Island Chapter are the same organization.

63.   The National Association has engaged in unfair competition, false representation, and false designation of origin in violation of Section 43(a) of the Lanham Act 15 U.S.C. §1125(a).

64.   The Former Long Island Chapter has suffered and will continue to suffer irreparable harm as a result of the National Association's actions, unless the National Association is enjoined from engaging in misrepresentation, false designation of origin and unfair competition.

65.   As a direct and foreseeable result of Defendant's conduct, the former Long Island Chapter has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $5,000,000.

## COUNT II

### UNLAWFUL DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349

66.   Plaintiff repeats and realleges each and every prior allegation made in paragraphs 1 through 65 as if fully set forth herein.

67.   The National Association's acceptance and conversion of charitable donations made payable to the former Long Island Chapter is likely to cause and is causing confusion, mistake, and deception among the general public. Such acts are also likely to deceive the public into believing that the services offered by the National Association originate from, are associated with, or are otherwise authorized by the former Long Island Chapter.

68.   Defendant's deceptive acts and practices involve public sales activities of a recurring nature, are consumer-oriented, and are materially misleading.

69.   The former Long Island Chapter has suffered, and will continue to suffer, irreparable harm as a result of the National Association's actions, unless the National Association is enjoined from engaging in unlawful deceptive acts and practices.

70.   As a direct and foreseeable result of Defendant's conduct, the former Long Island Chapter has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $5,000,000, plus attorneys' fees.

## COUNT III

### UNFAIR COMPETITION UNDER NEW YORK STATE LAW

71.   Plaintiff repeats and realleges each and every prior allegation made in paragraphs I through 70 as if fully set forth herein.

72.   The former Long Island Chapter has built up valuable goodwill in its Marks.

73.   Through the acts described above, the National Association has willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, including the bad faith usage of the former Long Island Chapter's goodwill, and the conversion of the former Long Island Chapter's property.

74.   These continuing practices are anti-competitive, commercially immoral, unethical and have caused and threaten to cause substantial additional injury to the former Long Island Chapter. As a result of such violations, the National Association has gained and will continue to gain unjust profits and undeserved good will.

75.   The National Association knew, or should have known, that charitable donation checks payable to the former Long Island Chapter, which was received and converted by the Defendant, was intended for the Long Island Chapter.  The repetitive and continuous conversion of charitable donation checks has misled and will continue to mislead the public into assuming a connection between the former Long Island Chapter and the National Association.

76.   The acts of the National Association have been and continue to be in bad faith, and in conscious and deliberate disregard of Plaintiff's rights.

77.   The acts of the National Association have been and continue to be performed with the intention of depriving the former Long Island Chapter of rightful donations and contributions.

78.   The former Long Island Chapter has suffered and continues to suffer irreparable harm as a result of the Association's actions. Plaintiff will continue to be harmed unless the Association is enjoined from engaging in unfair competition.

79.   As a direct and foreseeable result of Defendant's conduct, the former Long Island Chapter has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $5,000,000, plus punitive damages and attorneys' fees.