**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**MEMORANDUM OF**
**DECISION AND ORDER**

FILED
CLERK
11/8/2013 9:49 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

-------------------------------------------------------X
ALZHEIMER'S DISEASE RESOURCE
CENTER, INC.,

                Plaintiff,

    -against-                   13-CV-3288 (ADS)(ARL)

ALZHEIMER'S DISEASE AND RELATED
DISORDERS ASSOCIATION, INC. d/b/a
ALZHEIMER'S ASSOCIATION,

                Defendant.
-------------------------------------------------------X
ALZHEIMER'S DISEASE RESOURCE
CENTER, INC.,

                Plaintiff,

    -against-                   13-CV-4244(ADS)(ARL)

ALZHEIMER'S DISEASE AND RELATED
DISORDERS ASSOCIATION, INC. d/b/a
ALZHEIMER'S ASSOCIATION,

                Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**Morris Duffy Alonso & Faley**
*Attorneys for the Plaintiff*
2 Rector Street
New York, NY 10006
      By: William J. Manning, Esq., Of Counsel

**McDermott Will & Emery LLP**
*Attorneys for the Defendant*
227 West Monroe Street
Suite 4400
Chicago, IL 60606
      By: Jeffrey Baltruzak, Esq.
          William P. Schuman, Esq.
          Andrew B. Kratenstein, Esq., Of Counsel

**SPATT, District Judge**.

These related lawsuits arise out of disputes between the Defendant Alzheimer's Disease and Related Disorders Association (the "Association"), a voluntary health organization dedicated to fighting Alzheimer's disease, and the Plaintiff Alzheimer's Disease Resource Center, Inc. (the "ADRC" or the "Former Chapter"), the former Long Island chapter for the Association. After these two entities disaffiliated from each other in late 2012, the ADRC filed a demand for arbitration against the Association seeking an order allowing the ADRC to retain the funds it previously raised for the Association.

On June 10, 2013, the ADRC commenced a lawsuit in this Court, no. 13-cv-3288, asserting that the Association unfairly competed with the ADRC after the Former Chapter's disaffiliation by sending out 15 mass mailings under the name "Alzheimer's Association – Long Island Chapter." On August 9, 2013, the Association moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint for failure to state a claim and to strike the ADRC's request for punitive damages.

Meanwhile, on July 26, 2013, the ADRC commenced another case in this District, no. 13-cv-4244, asserting that the Association breached an agreement between the parties by using donor information it previously obtained from the ADRC prior to the disaffiliation. On August 21, 2013, that case was reassigned from Judge Leonard D. Wexler to this Court, as related to case no. 13-cv-3288. On August 26, 2013, the Association moved to dismiss that complaint.

For reasons set forth below, the Court (1) grants in part and denies in part the motion to dismiss the complaint in case no. 13-cv-3288 and (2) grants in its entirety the motion to dismiss the complaint in case no. 13-cv-4244.

2

## I.  BACKGROUND

For purposes of these Fed. R. Civ. P. 12(b)(6) motions, the Court must take as true all of the allegations of the complaints, and must draw all inferences in the ADRC's favor.  See Weixel v. Board of Educ., 287 F.3d 138, 145 (2d Cir. 2002).  The Court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken, or . . . documents either in [the] plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

A.  The Parties

The ADRC is a non-profit corporation with its principal place of business located at 45 Park Avenue, Bay Shore, New York 11706.  Until its disaffiliation from the Association, the ADRC served as the Association's local chapter for Long Island.  Indeed, the Former Chapter was incorporated in 1983 as "Alzheimer's Disease and Related Disorders Association – Nassau/Suffolk Counties Chapter, Inc."  In 1994, the Former Chapter's name became "Alzheimer's Disease and Related Disorders Association – Long Island Chapter, Inc."  In 1999, the Former Chapter's name became "Alzheimer's Association – Long Island chapter."   On November 6, 2012, following the Former Chapter's disaffiliation from the Association, it assumed its current name, "Alzheimer's Disease Resource Center, Inc."

The Association is a separate non-for-profit organization consisting of multiple chapters and field offices, with its national office at 225 N. Michigan Avenue, Floor 17, Chicago, Illinois 60601.  The Association is dedicated to funding research and raising awareness about Alzheimer's disease and related disorders, and is primarily funded through charitable donations and fundraising.

Since 2003, non-party Mary Ann Ragona served as the Executive Director/Chief

Executive Officer of the former Long Island chapter until she joined the ADRC at its inception.

The ADRC has approximately $2 million in net assets and raised about $1 million in the fiscal

year ending June 2012.

B.  The Pre-Lawsuits Factual History

In December 1998, the Association and the ADRC entered into an agreement called the

"Statement of Relationship" ("SOR") which governed the ADRC's status as an Association

chapter.  The SOR provided that the former chapter was the local entity for the Association

"charged with carrying out the purposes of the Alzheimer's Association at the local level within

the territories approved by [the Association.]" (SOR, § 1.2.)

The SOR also contemplated that the Association and the former chapter could part ways.

Specifically, the SOR provided that the distribution of "Chapter Assets," if not agreed upon,

would be subject to binding arbitration.

The ADRC alleges that over the years, the Association breached the SOR by, among

other things, permitting the Association's New York City chapter to fundraise from businesses

on Long Island and hold golf events at courses on Long Island.  The ADRC also asserts that the

Association breached the SOR by interfering in the management of the Former Chapter.

On October 6, 2012, the Association voted to disaffiliate the ADRC on the basis that the

latter had failed to comply with the SOR.  In response, the ADRC's board of directors voted to

disaffiliate from the Association.  The ADRC subsequently repudiated its former name, changing

its name from "Alzheimer's Association – Long Island Chapter" to its current name,

"Alzheimer's Disease Resource Center, Inc."  The Association immediately registered

4

"Alzheimer's Association – Long Island Chapter" with the New York Secretary of State, and updated its registration with the New York Attorney General to reflect the name.

According to the Former Chapter, after it disaffiliated from the Association and changed its name to the ADRC, the Association sent out 15 direct mass mailings from October 2012 to January 2013 "to Long Island residents in an attempt to solicit donations for itself in the name of the former Long Island chapter." The ADRC alleges that these mailings from the Association (1) were purportedly sent from the "Alzheimer's Association – Long Island Chapter" at the Bay Shore office; (2) identified the "Alzheimer's Association – Long Island Chapter" as the recipient of the return correspondence; and (3) used a return address in Washington, D.C. belonging to the Association. The ADRC contends that the Association lacked any presence on Long Island at the time the solicitation letters were sent. The ADRC asserts that the mailings purportedly came from Ragona, and that the Association forged her signature in those mailings. The ADRC also asserts that multiple donors, including one named Irene Alexander, mailed checks to the Association based on the mistaken belief that the donations were going to the ADRC.

Similarly, the ADRC alleges that the Association breached the SOR post-disaffiliation by using donor information it previously obtained from the ADRC to solicit donors for the Association's charity walks on Long Island.

C.   Procedural History

On May 3, 2013, the ADRC filed an arbitration demand against the Association with the American Arbitration Association seeking a declaration that it may retain the "Chapter Assets." In turn, the Association sought a declaration that the ADRC must return those assets to the Association. That arbitration is currently pending.

On June 10, 2013, the ADRC filed a complaint in an action bearing the index no. 13-cv-3288 asserting eight causes of action arising out of the allegedly improper mailings. Specifically, the ADRC asserts (1) violations of the Lanham Act, 15 U.S.C. § 1125(a); (2) violations of New York General Business Law § 349; (3) unfair competition under New York Law; (4) unjust enrichment; (5) payments on instruments with unauthorized signatures in violation of New York Uniform Commercial Code ("UCC") § 3-304; (6) conversion and conspiracy; (7) tortious interference with prospective economic advantage; and (8) fraud.  The ADRC seeks monetary damages, including punitive damages in the amount of $50,000,000.  On August 9, 2013, the Association moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint in that action and to strike the ADRC's request for punitive damages.

In the interim, on July 26, 2013, the ADRC brought a similar action bearing the index no. 13-cv-4244, alleging three causes of action arising out of Association's use of ADRC donor lists. In particular, in that action, the ADRC asserts (1) breach of contract; (2) misappropriation of trade secrets; and (3) unfair competition.   The ADRC seeks monetary damages and injunctive relief prohibiting the Association from utilizing the donor lists until their proper disposition is determined at the arbitration.  On August 21, 2013, that case was reassigned as related to the case no. 13-cv-3288 from Judge Wexler to this Court.  On August 26, 2013, the Association moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint in case no. 13-cv-4244 for failure to state a claim.

In both actions, ADRC contends that the allegations and desired recovery are not governed by the arbitration provision of the SOR because they relate to post-disaffiliation events. The Court will first address the motion to dismiss the complaint in case no. 13-cv-3288 and will then address the motion to dismiss the complaint in case no. 13-cv-4244.

## II. DISCUSSION

A.    Rule 12(b)(6) Legal Standard

Under the now well-established Twombly standard, a complaint should be dismissed

pursuant to Fed. R. Civ. P. Rule 12(b)(6) only if it does not contain enough allegations of fact to

state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U .S. 544,

127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007).  The Second Circuit has explained that, after

Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills,

572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.

Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at

72 (quoting Iqbal, 129 S. Ct. at 1949).

"'Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and . . . determine whether they

plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.  The issue on a motion

to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled

to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001)

(quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

B.      As to the Motion to Dismiss the Complaint in Case no. 13-cv-3288

   1. The Lanham Act

The ADRC first alleges that the Association violated Section 43(a) of the Lanham

Act by implying to the marketplace that the Association and the former Long Island Chapter are

one and the same.

Section 43(a) has developed into the federal vehicle for two major and distinct types of

"unfair competition": (1) infringement of unregistered marks, names, and trade dress; and (2)

false advertising. Empresa Cubana del Tabaco v. Cul bro Corp., 399 F.3d 462, 478 (2d Cir.

2005).  To prevail on an infringement claim under Section 43(a), a plaintiff must show that "(1)

it has a valid trademark entitled to protection, and (2) the defendant's mark infringes on the

plaintiff's mark by causing a likelihood of confusion among consumers as to the origin or

sponsorship of its product." Jewish Sephardic Yellow Pages. Ltd. v. DAG Media, Inc., 478

F.Supp.2d 340, 356 (E.D.N.Y. 2006) (citing Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 117

(2d Cir. 1999)); see Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995)

(noting that to prevail under 15 U.S.C. § 1114 or 15 U.S.C. § 1125(a) [Section 43(a)], a plaintiff

must show it has a valid mark entitled to protection and defendant's use of it is likely to cause

confusion).

Here, the ADRC correctly contends that registration of a trademark is not a prerequisite

for protection for a claim of infringement under the Lanham Act.  However, as noted above, a

protectable trademark is a prerequisite for such a claim.  Thus, because the ADRC concedes that

it has no valid trademark in the name "Alzheimer's Association – Long Island Chapter" or some

related expression, the Court grants that part of the Association's motion to dismiss the ADRC's

complaint to the extent it is based on infringement of a trademark under the Lanham Act.

Turning to the ADRC's claim for false advertising, such a claim requires that a plaintiff prove the following elements: (1) the defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation. See Merck Eprova AG v. Gnosis S.P.A., No. 07 CIV. 5898 (RJS), 2012 WL 4510668, at *8 (S.D.N.Y. Sept. 30, 2012) (citing S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001).

In this case, the Association undoubtedly placed the mailings in interstate commerce. Further, the Court finds that the allegations regarding the use of both the Bay Shore address and the Washington D.C. address, coupled with the inclusion of Ragona's name on the mailings, state a claim that the misleading mailings had the capacity to deceive a substantial portion of the intended donors into believing that they were donating to the former chapter when, in fact, they were donating to the Association. Indeed, the ADRC points to one donor, Alexander, who was allegedly actually deceived in this regard. The Court also finds that the ADRC adequately alleges injury inasmuch it references the diversion of donations to the Association that were meant for the former chapter.

The Association insists that the ADRC fails to properly allege that any deception was "material" such that it "made a difference" to donors. However, the ADRC points to Alexander who indicated that she "felt deceived" by the mailings and donated money to the Association believing it was going to the former chapter. The ADRC also asserts that "[u]pon information and belief, other donors who responded to the [] Association's mass mailings were similarly confused and deceived into making donations to the National Association that were intended for

9

the former Long Island Chapter."  Since the facts regarding the identity of these donors are

peculiarly within the knowledge of the Association, the ADRC should be allowed to engage in

discovery on this issue.  Accordingly, the Court denies that part the Association's motion to

dismiss the complaint to the extent it asserts a claim of false advertising under the Lanham Act.

    2. <u>The Section 349 Claim</u>

    General Business Law § 349(a) states that "[d]eceptive acts or practices in the conduct of

any business, trade or commerce or in the furnishing of any service in this state are . . .

unlawful."  "To state a claim under [General Business Law] § 349, a plaintiff must allege: (1) the

act or practice was consumer-oriented; (2) the act or practice was misleading in a material

respect; and (3) the plaintiff was injured as a result." <u>Spagnola v. Chubb Corp.</u>, 574 F.3d 64, 74

(2d Cir. 2009) (citing <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam));

<u>Koch v. Acker, Merrall & Condit Co.</u>, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675

(2012) (same).  "[T]he gravamen of [a General Business Law § 349 claim] must be consumer

injury or harm to the public interest." <u>Securitron Magnalock Corp. v. Schnabolk</u>, 65 F.3d 256,

264 (2d Cir. 1995) (internal quotation marks omitted).

    The ADRC has pled a claim for deceptive acts and practices.  "Donors are the consuming

public for charitable fundraising activities and are deceived, when a check intended for one

charity is cashed by another." <u>Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related

Disorders Ass'n, Inc.</u>, 796 F. Supp. 2d 458, 466 (S.D.N.Y. 2011); <u>see</u> <u>also</u> <u>Deborah Heart and

Lung Ctr. v. Children of the World Found., Ltd.</u>, 99 F. Supp. 2d 481, 494 (D. N.J. 2000) ("the

public also has a right to know to whom they are giving their money and who is administering

these services . . . . The consumers of these services should likewise know which organization is

treating them and which is not").

As noted above, the Court has found that the ADRC pled that the Association's trade practices were misleading in a material way and that it has been injured as a result.  Accordingly, the Court denies that part of the Association's motion to dismiss the complaint to the extent it asserts a claim under General Business Law § 349.

3. <u>As to Common Law Unfair Competition</u>

A cause of action based on unfair competition may be predicated "upon the alleged bad faith misappropriation of a commercial advantage belonging to another 'by exploitation of proprietary information or trade secrets.'" <u>Beverage Mktg. USA, Inc. v. South Beach Beverage Co., Inc.</u>, 20 A.D.3d 439, 440, 799 N.Y.S.2d 242 (2d Dep't 2005), quoting <u>Eagle Comtronics v. Pico Prods.</u>, 256 A.D.2d 1202, 1203, 682 N.Y.S.2d 505 (4th Dep't 1998).

In this case, the Court has found that the ADRC enjoyed no trademark in the name "Alzheimer's Association – Long Island Chapter."  Nor, the Court finds, does the use of that name or publicly available information like Ragona's name or the Bay Shore address qualify as a "trade secret." <u>Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.</u>, 118 F.3d 955, 968 (2d Cir. 1997)(applying New York law, "a trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'") (quoting Restatement of Torts § 757 cmt. b, at 5 (1939)).

The Court also finds that the information with regard to the ADRC is not "proprietary information" warranting the protection of the common law prohibition against unfair competition.  "Although unfair competition often involves misappropriation of trade secrets or ideas, a claim may be based on misappropriation of client lists, internal company documents, and business strategies 'if wrongful or fraudulent tactics are employed.'" <u>Barbagallo v. Marcum</u>

LLP, 820 F. Supp. 2d 429 (E.D.N.Y. 2011) (quoting Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387,

328 N.Y.S.2d 423, 278 N.E.2d 636 (1972)); accord Berman v. Sugo LLC, 580 F. Supp. 2d 191,

209 (S.D.N.Y. 2008).  In the Court's view, the name of an organization's executive and address

does not neatly fit within the categories typically associated with a common law claim for unfair

competition.  Accordingly, the Court grants that part of the Association's motion to dismiss the

complaint to the extent it asserts a common law claim for unfair competition.

4. As to Unjust Enrichment

"The basic elements of an unjust enrichment claim in New York require proof that (1)

defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P

v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004)

Here, the ADRC alleges that the Association was enriched at the ADRC's expense and

that "equity and good conscience" require that the ADRC be allowed to recover these sums.

Moreover, the SOR does not govern nor bar this quasi-contractual claim for unjust enrichment,

nor does this claim require arbitration, because the underlying events occurred after the

termination of the SOR.  Accordingly, the Court denies that part of the Association's motion to

dismiss the complaint to the extent it asserts a claim for unjust enrichment.

5. As to Payments on Instruments with Unauthorized Signatures in Violation of New
York CLS UCC § 3-304

The ADRC also alleges that the Association violated New York UCC § 3-304 by

depositing checks for donations that were intended for the ADRC.

However, New York UCC § 3-404 concerns the liability of banks where a signature on a

check has been forged.  Here, the ADRC does not allege that the Association accepted any

forged checks or forged any checks itself.  Moreover, where as, here, the ADRC makes no

mention of the forgery claim in its opposition papers, the Court deems the claim abandoned.  See

Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 452 n. 32 (S.D.N.Y. 2010) (claim

deemed abandoned because the plaintiff did not respond to, or even mention, claim in opposition

to the defendants' motion to dismiss).  Accordingly, the Court grants that part of the

Association's motion to dismiss the complaint to the extent it asserts a claim under UCC § 3-

404.

      6.  As to Conversion and Conspiracy

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the

right of ownership over goods belonging to another to the exclusion of the owner's rights."

Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403–04 (2d Cir. 2006), quoting Vigilant Ins.

Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995).  In a

conversion claim, a plaintiff must allege: "(1) the property subject to conversion is a specific

identifiable thing; (2) plaintiff had ownership, possession or control over the property before its

conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to

the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F.

Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted).

Although an action in conversion does not lie to enforce a mere obligation to pay money,

see Ehrlich v. Howe, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases), "it is well settled

that an action will lie for the conversion of money where there is a specific, identifiable fund and

an obligation to return or otherwise treat in a particular manner the specific fund in question."

Mfrs. Hanover Trust Co. v. Chem. Bank, 160 A.D.2d 113, 559 N.Y.S.2d 704, 712 (1st Dep't

1990); accord In re Musicland Holding, Corp., 386 B.R. 428, 440 (S.D.N.Y. 2008) (finding a

valid conversion claim where "the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession").

If the allegedly converted money is "incapable of being described or identified in the same manner as a specific chattel," such as when a customer of a bank deposits funds into an account at the bank, it is "not the proper subject of a conversion action." High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998). "This is so because a depositor loses (and the bank gains) title to money deposited in a general account at the moment those funds are deposited." Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000); see also Feinberg v. Katz, No. 99 Civ. 45, 2002 WL 1751135, at *16–17 (S.D.N.Y. July 26, 2002) ("Funds deposited with a bank become an asset of the bank").

In this case, the ADRC has not alleged "a specific identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113, 125, 559 N.Y.S.2d 704 (1st Dep't 1990). The money must be "specifically identifiable and segregated . . ." Id. (A wire transfer to a specific account in a specific amount was sufficiently identifiable and segregated to permit an action in conversion); Melnick v. Sable, 11 A.D.2d 1075, 206 N.Y.S.2d 825 (2nd Dep' t 1960) (A deposit delivered to a corporate defendant in anticipation of the purchase of business with the understanding that the money will be returned if the transaction was not consummated was sufficiently identifiable to support an action for conversion). "Because the funds at issue in this case [– checks directed to the Association that were intended for the ADRC – ] cannot be distinguished as specific chattel, [the ADRC] does not have a cause of action for conversion." Brassco, Inc. v. Klipo, 99 CIV. 3014 (PAC), 2006 WL 223154, at *20 (S.D.N.Y. Jan. 27, 2006)

"To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2d Cir. 2012) cert. denied, 133 S. Ct. 952, 184 L. Ed. 2d 752 (2013).  Given that the ADRC has not adequately alleged an underlying tort of conversion, it cannot allege a conspiracy related to such conversion.

Accordingly, the Court grants that part of the Association's motion to dismiss the complaint to the extent it raises a claim of conversion and conspiracy.

### 7. As to Tortious Interference with Prospective Economic Advantage

To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must allege that: "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (citing Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)).

Here, the ADRC fails to allege the sort of business injury necessary to satisfy the last element of the tort. See e.g. RFP LLC v. SCVNGR, Inc., 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011) ("Interference that does not rise to the level of a breach of agreement or severance of the relationship does not amount to an injury sufficient to make a tortious interference claim.") While the allegations suggest injury in the form of lost donations, the ADRC fails to particularize any damage to its relationships with its donors. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 115 (2d Cir. 2010) (rejecting claims of tortious interference with business relations where

the "allegations are too conclusory, vague, and lacking in a factual basis"); Nadel v. Play–By–Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir. 2000)(mere suspicions are inadequate to support a claim for tortious interference with business relations).  Accordingly, the Court grants that part of the Association's motion to dismiss the complaint to the extent it raises a claim of tortious interference with prospective economic advantage.

    8. Fraud

    The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by the defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996); see also Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).

    In this case, the ADRC has failed to plead ""reasonable *reliance on the part of the plaintiff*."  Crigger, 443 F.3d at 234 (emphasis added).  Rather, under the ADRC's theory, the alleged misrepresentations were directed at donors.  Such allegations of third-party reliance, however, are insufficient to make out a common law fraud claim under New York law. See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998) (explaining "that a plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements.").  Accordingly, the Court grants that part of the Association's motion to dismiss the complaint to the extent it raises a claim of common law fraud.

16

9.  Punitive Damages

In addition to moving to dismiss the above-mentioned causes of action, the Association also seeks to have the Court strike those portions of the complaint seeking punitive damages. The remaining causes of action sound in the Lanham Act, Section 349 of the New York General Business Law, and common law unjust enrichment.

"The [Association] is correct in [its] assertions that punitive damages are inappropriate for violations of the Lanham Act." H & R Indus., Inc. v. Kirshner, 899 F. Supp. 995, 1011-12 (E.D.N.Y. 1995), citing Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113 (2d Cir. 1988).  Accordingly, to the extent the ADRC seeks punitive damages under the Lanham Act, that request is stricken.

However, "Section 349 of the New York General Business Law expressly allows for the recovery of limited punitive damages in connection with a successful claim." Bristol Vill., Inc. v. Louisiana-Pac. Corp., 916 F. Supp. 2d 357, 371 (W.D.N.Y. 2013); see N.Y. General Business Law § 349(h) (granting a court discretion to triple amount of damages up to one-thousand dollars); Karlin v. IVF America, Inc., 93 N.Y.2d 282, 291, 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999) (remedies available pursuant to section 349 include compensatory damages, limited punitive damages, and attorneys' fees).  Thus, the Association's motion to strike the request for punitive damages under Section 349 is denied.

Finally, "[u]njust enrichment is an equitable claim.  The remedy in such an action is intended to restore to the plaintiff any benefit unjustly conferred on the defendant.  This usually involves the return of money or property.  Punitive damages are inappropriate with respect to a claim of unjust enrichment." Hutton v. Klabal, 726 F. Supp. 67, 73 (S.D.N.Y. 1989)(internal

citation omitted).  Therefore, to the extent ADRC seeks punitive damages for its unjust enrichment claim, that request is stricken.

C.    <u>As to the Motion to Dismiss the Complaint in Case no. 13-cv-4244</u>

    1.    <u>As to the Breach of Contract</u>

The ADRC alleges that the Association breached the SOR after the parties disaffiliated by utilizing "Chapter Assets" – namely, donor information – and failing to arbitrate this issue. The parties agree that the ADRC voluntarily gave this information to the Association in the first instance.  However, the ADRC insists, the Association's continued use of this information post-disaffiliation constitutes a breach of the SOR.

The Court finds that this claim fails as a matter of law.  After the parties' disaffiliated from each other, the parties' contractual obligations under the SOR ceased.  Whether a particular asset qualifies as a "Chapter Asset," and who shall have ownership of that asset in the future, is a determination expressly reserved for arbitration.  Accordingly, the Court grants that part of the Association's motion to dismiss the complaint to the extent it asserts a claim for breach of contract.  Insofar as the ADRC seeks injunctive relief regarding the donor lists and other "Chapter Assets" pending a final determination by the arbitrator, the ADRC is directed to seek redress with the arbitrator.

    2.    <u>As to Misappropriation of Trade Secrets</u>

The Second Circuit has held that:

> To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.

<u>Faiveley Transport Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 117 (2d Cir. 2009) (citations and internal quotation marks omitted).

Here, even assuming the donor lists constitute a trade secret, the Court finds that the ADRC has failed to allege that the Association used the former chapter's donor information "in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." As noted above, the ADRC cannot claim that the Association breached the SOR by using the donor information after the agreement was terminated. Nor can ADRC allege that the Association acquired information improperly because the former chapter concedes in the complaint that it freely provided this information to the Association. Finally, the ADRC alleges no confidential relationship or duty between ADRC and the Associations; rather, only a contractual relationship between the parties. For these reasons, the Court grants that part of the Association's motion to dismiss the complaint to the extent it asserts a claim of misappropriation of trade secrets.

3.  Unfair Competition

The ADRC asserts a claim of common law unfair competition stemming from the Association's use of the donor lists.

Under New York law, "[t]he essence of unfair competition . . . is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995) (quoting Rosenfeld v. W.B. Saunders, 728 F. Supp. 236, 249–50 (S.D.N.Y. 1990)).

Here, the ADRC's unfair competition claim must fail. The ADRC's contentions fail to demonstrate the Association's bad faith in any way beyond the most conclusory fashion. At most, the ADRC has alleged that the Association used for a limited time period after the termination of the SOR donor information that the ADRC previously and voluntarily gave to the

19

Association.  It bears mentioning that the Association contends that the ADRC published many of the names of its donors on its website, and the ADRC states nothing to the contrary. Accordingly, the Court grants that part of the Association's motion to dismiss the complaint to the extent it asserts a claim of unfair competition.

### III. CONCLUSION

For the foregoing reasons, it hereby:

**ORDERED**, that in case no. 13-cv-3288, the Association's motion to dismiss the complaint is denied to the extent the ADRC asserts (1) a claim of false advertising under the Lanham Act, (2) a claim under New York General Business Law § 349; (3) unjust enrichment; and it is further

**ORDERED**, that the Association's motion to dismiss the complaint in case no. 13-cv-3288 is otherwise granted with prejudice.  In particular, the Court grants the Association's motion to dismiss the following claims: (1) trademark infringement under the Lanham Act; (2) common law unfair competition; (3) violation of New York CLS UCC § 3-404; (4) conversion and conspiracy; and (5) tortious interference with prospective economic advantage; and (6) common law fraud.  The Court also strikes the ADRC's request for punitive damages related to its Lanham Act and unjust enrichment claims; and it is further

**ORDERED,** that, in case no. 13-cv-4244, the Association's motion to dismiss the complaint is granted in its entirety and the complaint is dismissed with prejudice.

**SO ORDERED.**
Dated: Central Islip, New York
November 8, 2013

_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge